

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

---

*CRAIG CARPENITO*                                                                                 *401 Market Street, Fourth Floor*
*United States Attorney*                                                                *Camden, New Jersey 08101-2098*

*ALISA SHVER*                                                                                         *Direct Dial: 856.968.4864*
*Assistant United States Attorney*                                                  *Email:  alisa.shver@usdoj.gov*

September 11, 2020

<u>Via ECF</u>

Hon. Ann Marie Donio
United States Magistrate Judge
District of New Jersey
Mitchell H. Cohen Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

        Re:    <u>United States v. Andrew Drechsel, 20-mj-1044 (AMD)</u>

Dear Judge Donio,

        The government respectfully submits this letter in response to the defendant's motion for bail, dated September 10, 2020 (ECF Dkt. No. 9 ("Mot.")) filed in anticipation of the defendant's bail hearing scheduled for September 11, 2020.

        On August 4, 2020, the defendant was arrested in the Middle District of Florida pursuant to a criminal complaint charging him for conduct involving sexual contact with a minor.  *See* ECF Dkt. No. 1.  The defendant was charged with (1) Use of Interstate Commerce to Entice a Minor to Engage in Sexual Activity; (2) Enticement to Travel for Illicit Sexual Conduct Involving a Minor; (3) Travel with the Intent to Engage in Illicit Sexual Conduct; and (4) Manufacture of Child Pornography.  The charges all relate to the defendant's illegal sexual relationship with at least one minor female victim, beginning when she was 14 years old.

        As set forth below, the defendant cannot overcome the statutory presumption that no condition will reasonably assure his appearance and the safety of the community.  And even if the defendant could overcome that presumption, given the circumstances of the defendant and the facts of the case, the government has met its burden of demonstrating the defendant's dangerousness and risk of flight.

        Indeed, the defendant largely sidesteps the issues of his dangerousness and risk of flight by claiming that the COVID-19 pandemic is sufficient grounds to grant his release.  But the defendant has offered no evidence that he is uniquely situated with respect to the risks of COVID-19, in fact the defendant is in excellent health having competed in and won America Nina Warrior, or that the Bureau of Prisons ("BOP") is not appropriately handling the situation.  The defendant's motion should therefore be denied.

I.        Background

The defendant can be properly characterized as a type of celebrity in the world of professional athletic competitions. Specifically, the defendant was heavily involved in the "American Ninja Warrior" ("ANW") organization, appearing on nationally syndicated television programs, touring sports gyms across the United States, and interacting with people of all ages to encourage popularity in the activity. In order to promote this business, the defendant regularly traveled to "competitions" held at various privately owned gyms, received money/prizes for the competitions as well as for his appearances in those gyms.[1]

The defendant met and began communicating with a minor female victim, identified herein as "Victim 1," when she was 14 years old. At that time, the defendant was at least 25 years old and living in Connecticut. The defendant met Victim 1 after appearing with other ANW participants at a nearby gym. From that time until after Victim 1 attained the age of 16, the defendant fostered and encouraged a sexual relationship with Victim 1, knowing that she was under the age of 16. As stated in more detail in the criminal complaint, the defendant traveled to New Jersey in order to engaged in sexually illicit conduct with Victim 1. The defendant also encouraged Victim 1 to travel across state lines in order to engage in sexually illicit conduct with him.

After Victim 1 made a formal complaint against the defendant, law enforcement agents executed a search and seizure warrant at the defendant's residence in Hamden, Connecticut. Incidentally, this residence that the defendant shared with the proposed third party custodian, was one of many locations where the defendant engaged in sexual intercourse with Victim 1 when she was a minor and his girlfriend, the proposed third party custodian, was present at the home.

Recovered from the defendant's residence were multiple cellular telephones, which law enforcement agents identified as belonging to the defendant. Of those cellular telephones, one contained a program designed to hide text messages, photos and videos. Law enforcement agents were able to access that program and recovered, among other things, at least six images of child pornography depicting Victim 1 from the age of 14, and one video. That video, recorded by the defendant, depicts illicit sexual conduct of Victim 1 at the age of 15.

Also recovered from the defendant's cellular telephone were multiple text conversation with Victim 1, including a statement where the defendant told her to delete their messages as well as a request to find a "safer" way to communicate.

After November, 2019, the defendant moved to the Ft. Lauderdale area of Florida, along with his girlfriend, where he was eventually arrested in the instant matter. At an initial appearance before United States Magistrate Judge Gregory Kelly in the Middle District of Florida, the defendant contested detention. His girlfriend April Beckner, the same person proffered by the defendant in the instant motion, testified before that court to be his third party custodian. That court denied the defendant's request, citing, amongst other things, that some of the alleged sexual conduct between the defendant and Victim 1 occurred in her home and while she was present.

---

[1] Besides attaining national notoriety from the ANW competition, the defendant also used his popularity to launch a motivational speaking business. *See* Pretrial Services Report, at 2.

After the defendant's arrest in the instant case, the Camden County Prosecutor's Office filed charges against the defendant for sexual assault in the second degree, manufacture of child pornography, luring in the second degree, and endangering the welfare of a child in the third degree. Moreover, the defendant faces additional charges in Burlington County, New Jersey, as well as Hamden, Connecticut, Maryland, and California.

II.  Legal Standard

The government bears the burden of showing that the defendant should be detained, either by a showing of a preponderance of the evidence that the defendant is a flight risk or clear and convincing evidence, that the defendant is a danger to the community. *United States v. Schenberger*, 498 F. Supp. 2d 738, 740 (D.N.J. 2007)

In cases such as this, however, where there is probable cause to believe the defendant violated 18 U.S.C. §§ 2251, 2422(a),(b), and 2423, there is a statutory presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E). Even if a defendant can overcome the presumption, the special risk of dangerousness posed by defendant who have committed such crimes "remains a factor to be considered among those weighed by the district court." *United States v. Abad,* 350 F.3d 793, 797 (8th Cir.2003) (quoting *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir.2001); *United States v. Chagra,* 850 F.Supp. 354, 358 (W.D.Pa.1994) (Diamond, J.) (the presumption once rebutted does not disappear, but "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 1342(g).") (quoting *United States v. Dominquez,* 783 F.2d 702, 707 (7th Cir.1986)).

In determining whether a defendant poses a risk of flight or a danger to the community, courts are required to consider four factors: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence…involves a minor victim"; (2) the "weight of the evidence against" the defendant; (3) the "history and characteristics" of the defendant including his "family ties…financial resources…past conduct"; and (4) "the nature and seriousness of the danger…posed by the defendant's release." 18 U.S.C. § 3142(g).

III.  Argument

The defendant's dangerousness is shown by his pattern of manipulation and coercion, taking place over many years. Here, the strong evidence of the defendant's guilt and the likelihood that he will serve a substantial sentence, including multiple charges that carry mandatory minimum sentences of 15 years and 10 years, gives him every incentive to flee. The defendant also possesses the financial means to effectuate that. More importantly, the defendant poses a real danger to the community. As set forth below, each factor under § 3142(g) favors detention, and the defendant's proposed bail package is inadequate to protect the community and ensure his appearance.

A. The Nature and Circumstances of the Offense

As set forth above, as well as within the affidavit in support of the criminal complaint, *see* ECF Dkt. No. 1., the charged offenses are crimes of violence. No one questions that child pornography is an insidious offense since it takes advantage of a particularly vulnerable segment of society, children. *United States v. MacEwan,* 445 F.3d 237, 250 (3d Cir. 2006). The Third Circuit has acknowledged the dangers of child pornography and has quoted congressional findings under 18

U.S.C. § 2251 which "repeatedly stress ... that child pornography 'is a form of sexual abuse which can result in physical or psychological harm or both, to the children involved' " *Id.* at 249, quoting Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, at 3009-26 (1996)(codified as amended at 18 U.S.C. § 2251).  Further, the Third Circuit quoted the same findings which indicated that "where children are used in its production, child pornography permanently records the victim's abuse and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Id.* at 250.

The Third Circuit does not distinguish between a distributor or mere consumer in child pornography "because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the **community** and presents a **clear** and present **danger** to all children' " *Id.*  Furthermore, child pornography "inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as the result of the existence and use of these materials." *Id.*  For the purposes of the Bail Reform Act, any felony under 18 U.S.C. § 2251, et seq. is classified as a crime of violence.  18 U.S.C. § 3156(a)(4)(C).

Though the mere receipt of child pornography is dangerous and encourages illicit activity, the defendant here is charged with an even more insidious crime, that of producing child pornography. *See Schenberger*, 498 F. Supp. 2d 738, 743 (D.N.J. 2007).  Here, the defendant, by coercing and manipulating a minor, manufactured the pornography in question.  Furthermore, this is not an instance where defendant inadvertently received a handful of images.  Defendant is the producer.

The defendant's notoriety, which continues today and is the basis of his employment, gave him access to potential victims.  The evidence demonstrates that the defendant knew Victim 1 was a minor (child pornography found in the defendant's phone depict Victim 1 at 14 years old; moreover the defendant invited Victim 1 to celebrate her 15th birthday at his gym in Connecticut, where they engaged in sexual activity at the facility), and knew what he was doing was criminal.  The defendant asked Victim 1 to delete their conversations, and suggested that they find a safe way to communicate.  Their communications show that the defendant was the coercer, manipulator, and used his position of celebrity to gain access to the minor victim.  The government does not allege that the defendant is a sexual predator of toddlers, but he is a sexual predator of pubescent girls.

B.  The Weight of the Evidence

The defendant does not seriously dispute the strong evidence against him.  As noted above, the defendant's conversations were corroborated by evidence found on the defendant's own cellular telephone.  The manner in which the child pornography and communications with Victim 1 were kept is evidence of his guilty conscience.

C.  The History and Characteristics of the Defendant

The defendant's history and characteristics demonstrate his persistent danger to the community. In a bizarre disclosure, the defendant's own motion tells this Court that Victim 1 is not his only victim. The defendant alleges that he has been living with his "partner in life" for "the past nearly 10 years." Mot. at 5.  During the course of this investigation, law enforcement agents learned that April Beckner was born in May of 1995.  *Accordingly, April Beckner was 15 years old when she began a relationship with the defendant.*

4

Additionally, the defendant used his position in ANW competitions as a cover for his more nefarious deeds.  He was able to surround himself with minor young girls who idolized him.  He used the competitions to travel across multiple states, where he engaged in illicit sexual conduct with minor Victim 1.  Unbeknownst to his "partner in life" as well as his friends, the defendant continued this behavior for years.  The defendant has shown that he can be deceptive with his closest family and friends, over an extended period of time.

The defendant is facing a mandatory minimum sentence of fifteen years and he has the financial means to flee.  The prospect of such a sentence gives the defendant a strong reason to flee if released rather than return to court to face these charges.

D.  The Defendant's Proposed Bail Package is Inadequate

Given the factors discussed above, there are no conditions of release that could assure that the defendant would not pose a danger or flee.  But even if such conditions were possible, the defendant's proposed bail package does not rise to that level.

Initially, while the defendant offers to be on GPS monitoring, there is no realistic way to prevent the defendant from using a computer, smartphone, or other means of interstate commerce to contact other potential victims.  Indeed, his notoriety is one factor that militates against release.  The defendant has access to an extensive network of individuals because of his celebrity.  The prospect of placing the defendant under even the most stringent house arrest does not address the very real possibility that further similar criminal conduct could be carried out from the home.  *See United States v. Bergrin*, 2009 WL 1560039, at *9 (D.N.J. May 29, 2009) *citing United States v. Gotti,* 776 F.Supp. 666, 672 (E.D.N.Y.1991).  *See, e.g., United States v. Orena,* 986 F.2d 628,632–33 (2d Cir.1993).

Additionally, the proposed monitoring should be of no comfort to the Court.  In particular, the defendant's endorsement of a GPS monitoring bracelet is farcical because it neither useful nor effective after it has been removed.  At best, the behavioral prohibitions proposed are essentially unenforceable promises not to engage in behavior that might facilitate the defendant's flight from this jurisdiction or from the United States. *See United States v. Abdullahu*, No. 07-2050 JS, 2007 WL 1816010, at *4 (D.N.J. June 21, 2007) (rejecting argument that GPS monitoring and home confinement can guarantee the safety of the community).  *See also United States v. Anderson*, 384 F.Supp.2d. 32, 41 (D.Col.2005) (denying bail because of a concern that the defendant "could frustrate even a GPS-based monitoring system, at least for a period of time sufficient to allow him to flee").

Furthermore, the defendant's proposed third party custodians are completely inadequate.  Besides the disturbing revelation that the defendant's "partner in life" began a relationship with him at the age of 15, Ms. Beckner was *physically present* when the defendant engaged in sexual activity with Victim 1.  The defendant was apparently able to deceive Ms. Beckner on a daily basis, for years, with no repercussions.  Furthermore, the defendant was sophisticated enough to know how to communicate with Victim 1 without leaving an obvious electronic trail.  The defendant took an even more sophisticated step by hiding his communications using an encrypted and secret phone application.

The defendant was also apparently able to deceive other members of his family, Ms. Beckner's family, and their friends, by continuing the illicit sexual conduct.  There is no reasonable basis to believe that Ms. Beckner or the defendant's mother is capable of exercising the type of diligent supervision that would be required for a third party custodian.  None of the proposed conditions would

do more than "elaborately replicate a detention facility without the confidence of security such a facility instills." *Bergrin*, 2009 WL 1560039, at *9 (D.N.J. May 29, 2009).

### E.  Release is Not Warranted For Any Other Reason

While the defendant largely ignores the statutory factors, his primary argument for release is the existence of COVID-19.[2]  Despite spending more than half of his motion citing to the spread of COVID-19, the defendant fails to make any cognizable assertion that he is uniquely at risk for contracting COVID-19.  Nor does the defendant claim to fall within an at-risk category for contracting COVID-19.  Instead, his argument expresses a generalized fear of COVID-19.  This is not sufficient.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not qualify as a cognizable basis for pre-trial release.  While the government agrees as to the serious risk the virus poses to inmates, the Third Circuit has made it abundantly clear that that risk alone cannot justify early release. *See United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (precedential) ("the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

The defendant failed to articulate any specific underlying medical condition, nor demonstrate any circumstances particular to him to justify pre-trial release on the basis of the presence of COVID-19.[3]  The defendant does even purport to have contracted COVID-19.  Accordingly, the defendant has not presented any reason, let alone a "compelling reason," for his release.

### IV.  Conclusion

For the reasons set forth above, the government respectfully submits that the defendant cannot overcome the statutory presumptions of dangerousness and risk of flight, and that, in any event, the government has met its burden of proving the defendant's dangerousness and risk of flight.  The motion should be denied.

---

[2] Though the defendant attached multiple affidavits from defense experts, none of them proffer an opinion more recent than March 15, 2020, nor do any of them address the conditions at FDC Philadelphia or Salem County Jail, facilities used by the U.S. Marshal Service in Camden.

[3] In his motion, the defendant cites to orders releasing inmates who had underlying medical conditions that made them "vulnerable to serious complications or death if they contract the virus." Mot. at 12. In fact, the only recent decision cited by the defendant involved an inmate who had served 75% of a 120 month sentence, and whose medical condition categorized him at an increased risk for severe illness. *Id*.

Respectfully submitted,

CRAIG CARPENITO
United States Attorney

By: Alisa Shver
Assistant U.S. Attorney
District of New Jersey

cc: Christopher Adams, Esquire (by ECF)
Wayne Webb, U.S. Pretrial Service Officer (by ECF)